```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZAGG, INC.                       :     CIVIL ACTION
                                 :
     v.                          :
                                 :
ANTHONY H. CATANACH, JR., et al.:      NO. 12-4399
```

MEMORANDUM

Bartle, J.                                      September 27, 2012

ZAGG, Inc. ("Zagg") has brought this action for defamation and false light under Utah state law[1] against Anthony H. Catanach, Jr. ("Catanach") and J. Edward Ketz ("Ketz"), two business school professors at universities in Pennsylvania.  Zagg alleges that Catanach and Ketz published false and defamatory statements about it on a blog.  Before the court is the motion of Catanach and Ketz to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to

---

1. The parties agreed in a telephone conference held by the court that Utah state law would apply to this motion.  The parties do not brief the issue of false light.  One party simply cites a case that the same standard applies to it as to defamation.  For present purposes, we agree.  See Stien v. Marriott Ownership Resorts, Inc., 944 P.2d 374, 380-81 (Utah Ct. App. 1997).

the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.  This court may consider the allegations in the complaint along with matters of public record and any exhibits attached to the complaint.  E.g., Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## II.

The following facts are viewed in the light most favorable to the plaintiff.  Zagg is a publicly traded company that specializes in the production, marketing, and distribution of consumer electronic accessories.  Catanach is a professor at the School of Business at Villanova University, and Ketz is a professor at the Smeal College of Business at Pennsylvania State University.  They are coauthors of a blog with the website http://blogs.smeal.psu.edu/grumpyoldaccountants ("Grumpy Old

Accountants blog"). Catanach and Ketz authored and caused to be published an article entitled "Don't Gag on Zagg" on the Grumpy Old Accountants blog. In the article, they made a number of statements about Zagg's accounting practices. Zagg alleges in its complaint that the following statements from the article are defamatory:

> a. "The numbers are giving off so much smoke that we think management may have blinded both the auditors and investors."
> b. "At worst, management may be 'cooking the books.'"
> c. "ZAGG's balance sheet is littered with items prompting valuation and disclosure concerns."
> d. "The company includes accounts receivables from credit card processors in its reported cash balances.  You know how we feel about this right? ... Instead of the Company reporting positive cash flow for 2011, it really 'burned' cash."
> e. "[I]t is ironic and worrying that the ifrogz business segment is losing money right out of the gate."
> f. "Still not convinced that ZAGG management is massaging the numbers?  Maybe the following will make the hairs on the back of your neck stand up."
> g. "This is a financial reporting debacle in the making."
> h. "It makes us grumpy when a firm overstates its cash by adding in some receivables, as note 1 explains.  And why did ZAGG do this?  In an attempt to fool investors about its cash flows!"

Zagg maintains that these statements are false and damaged its reputation among potential purchasers of the goods it sells, and among its shareholders, potential shareholders, investment managers, and other market participants. According to

Zagg they also contributed to a decrease in the value of its stock.

                                III.

To state a claim for defamation under Utah law, plaintiff "must show that defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." West v. Thomson Newspapers, 872 P.2d 999, 1007-08 (Utah 1994) (citations omitted). It is undisputed that the defendants published the statements and that they concerned Zagg. At this stage of the action, we must accept as true Zagg's allegations that the statements are false and that their publication resulted in damage. Id. at 1008.

We must first focus on whether the statements in issue are capable of sustaining a defamatory meaning. This is a question of law. Id. at 1008. If the court decides in the affirmative, the jury or fact-finder then determines "whether the statement was in fact so understood by its audience." Id. "Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." Id. (citations omitted). Published statements are not defamatory when they are simply "nettlesome or embarrassing to a plaintiff" even when the statements are false. Id. at 1009. Rather, the statements must damage the plaintiff's reputation "in

the eyes of at least a substantial and respectable minority of its audience."  Id.  Statements may also form the basis for a defamation claim if "the implication arising from the statement and the context in which it was made, not the statement itself" make the statement capable of defamatory meaning.  Id. at 1011.  These types of claims are referred to as "defamation-by-implication" claims.  Id.

   The statements in issue by Catanach and Ketz on the Grumpy Old Accountants blog were not merely nettlesome or embarrassing but rather were capable of damaging Zagg's reputation.  They directly impeached Zagg's honesty with statements such as "[t]he numbers are giving off so much smoke that we think management may have blinded both the auditors and investors" and others such as "Zagg's balance sheet is littered with items prompting valuation and disclosure concerns," and "[Zagg is] attempt[ing] to fool investors about its cash flows."  These statements imply dishonesty and even criminality and thus are capable of defamatory meaning.

   Even when statements may otherwise be capable of defamatory meaning, the Utah Constitution protects expressions of opinion under Article I, § 15, which states "[n]o law shall be passed to abridge or restrain the freedom of speech or of the press."[2]  Utah Const. art I, § 15; see also West, 872 P.2d at

---

2.  The defendants do not contend that their statements are protected under the United States Constitution, and we thus only address protections under Utah law.

1015.  The defendants contend that their statements in the Grumpy Old Accountants blog were all expressions of opinion, as noted in a disclaimer at the end of the article stating, "[t]his essay reflects the opinion of the authors and not necessarily the opinions of the Pennsylvania State University, the American College, or Villanova University."  They also point out that a number of statements are preceded with the words, "we think."  These exculpatory words in and of themselves do not save the statements in issue from being defamatory.  See Milkovich v. Lorain Journal Co., 497 US 1, 18 (1990).  It would undermine the law of defamation if speakers or authors could simply employ a talismanic word formula to absolve themselves of slander or libel.  See Id. at 18-19.

　　　　Although opinions are protected from defamation liability under the Utah Constitution, any facts implied by the opinion or underlying the opinion are not protected.  West, 872 P.2d at 1015.  The Supreme Court of Utah in West found federal decisions defining the First Amendment opinion privilege to be helpful for distinguishing actionable fact from nonactionable opinion under the Utah Constitution.  Id. at 1018.  It relied specifically on "four factors as useful in distinguishing fact from opinion:  (i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement -- for example, the entire article or column -- in which the defamatory statement is made; and (iv) the broader

setting in which the statement appears."  Id. (citing Ollman v. Evans, 750 F.2d 970, 979 (D.C. Cir. 1984) (en banc)).

We will address each factor in turn.  The Ollman decision cited by West explained that the first factor, "common usage or meaning of the words used," was relevant for "determining whether the statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous."  Ollman, 750 F.2d at 979 (citations omitted).  The court reasoned that readers of the statements would be "considerably less likely to infer facts from an indefinite or ambiguous statement than one with a commonly understood meaning."  Id.  Here, the statements by Catanach and Ketz have commonly understood meanings.  For example, when a reader sees "[a]t worst, management may be 'cooking the books'" or Zagg's "attempt to fool investors about its cash flows," he or she understands that the authors are implying false numbers in Zagg's ledger amounting to at least potential criminality.

As for the second factor, the statements by Catanach and Ketz about Zagg are capable of being verified.  Accountants are able to look at Zagg's financial records and public filings to determine whether there were manipulations and irregularities giving rise to "valuation and disclosure concerns," as accused.

Turning to the third factor, reading the full context of the blog posting would not lead a reader to believe that the statements were opinions and not steeped in fact.  Even though

-7-

the authors did include at the end of the article that the essay reflected their opinions and at times use the phrase "we think," various statements in the article explained to the reader that the authors had read Zagg's public filings and financial statements and were basing their statements on these factual disclosures.  For example, the article states, "[o]ur review of the Company's operating environment and the 2011 10-K leads us to conclude that at the very least, the Company's reported amounts are suspect."  This statement is based on data from the 10-K.  In sum, the full context of the article would not lead a reader to conclude it was mere opinion.

The fourth factor requires the court to consider "the broader setting in which the statement appears."  The Supreme Court of Utah explained that statements in newspaper editorials tend to be more exaggerated than "hard news," and as a result readers are "less likely to form personal animus toward an individual based on statements made in an editorial."  Id. at 1009.  This led the West court to determine that the statements at issue in that case, which were published in a newspaper editorial about a mayor of a town in Utah, were not capable of defamatory meaning.  Similarly, here readers may be less likely to sell their stock in a company when they read about potential disclosure concerns on the Grumpy Old Accountants blog than, for example, on the front page of The Wall Street Journal.  On the other hand, the defendants are professors at business schools,

with apparently no political axe to grind.  Readers are likely to take their statements about corporate finance seriously.

In West the plaintiff was a public official, and the court explained that this factor was relevant to its finding that the statements were opinions not capable of defamatory meaning. Id. at 1009-10.  The context of any statement is critical. Readers expect that public officials will be criticized in newspaper editorials and that these criticisms are opinions.  Id. That is just the nature of politics.  Here, in contrast, two business school professors are making statements about the dishonesty of a corporation.  Public companies are not routinely accused of fraud by business professors, and any such accusations would not be presumed to be opinions.  The statements of Catanach and Ketz about Zagg on their blog are therefore not protected opinions under Utah law because the meaning of the statements is clear, they are capable of being verified, and the context of the statements and the broader settings in which they appear do not signal to the reader that the statements are opinions and not facts.

Accordingly, we will deny the motion of the defendants to dismiss for failure to state a claim because the statements of these business school professors about Zagg on their blog are capable of defamatory meaning and are not protected as opinions. We, of course, make no determination of whether the statements are true or false.  Whether defamation actually occurred will be for the fact-finder to decide.